SECURITIES AND EXCHANGE COMMISSION v. CRUDE OIL CORPORATION OF AMERICA et al.

No. 2309.

District Court, W. D. Wisconsin.

Dec. 1, 1936

John J. Burns, Gen. Counsel, of Washington, D. C., and W. McNiel Kennedy, Henry Fitts, and Robert E. Ward, all of Chicago, Ill., for Securities and Exchange Commission.

Stephens, Sletteland, Foster & Cannon, of Madison, Wis., for B. E. Buckman & Co. and Wells-Kendall Co.

Leonard L. Cowan, of Chicago, Ill., for defendant Crude Oil Corporation of America.

STONE, District Judge.

### Findings of Fact.

1. That the bill of complaint herein was properly filed in the District Court of the United States in and for the Western District of Wisconsin, and that the court has jurisdiction of the subject matter and of the parties hereto.

2. That the Crude Oil Corporation of America is a corporation organized under the laws of the state of Delaware, with its principal place of business in the city of Tulsa, state of Oklahoma; that the defendant B. E. Buckman & Co. is a corporation organized under the laws of Wisconsin, with its home office at Madison, Wis.; that the Wells-Kendall Company is a corporation organized under the laws of the state of Delaware, and has its principal place of business at Madison, Wis.

3. That the Crude Oil Corporation of America, hereinafter referred to as "Corporation," is now, and has been since 1934, engaged in the transaction of business in the manner following: It purchased oil royalties, sometimes referred to as "farmers' oil," of an estimated oil content one and one-half times as great as the aggregate number of barrels of oil called for in the delivery contracts hereinafter referred to. It pays for the royalties at the rate of 25 cents a barrel of the estimated content. The farmer or owner who leases his property to a producer to market the oil removed therefrom ordinarily receives from the producer one-eighth of the proceeds of the oil produced on his property. It is a part of this one-eighth interest that the "Corporation" purchases in the form of a royalty. These royalties are transferred to one W. C. Franklin as trustee under a trust agreement, a copy of which is marked Exhibit I and made a part hereof. Franklin is a director and treasurer of the "Corporation." He is also its attorney. The "Corporation" then, through its salesmen in Wisconsin, Illinois, Minnesota, New York, and other states, enters into delivery contracts with residents of those states. A copy of this delivery contract is marked Exhibit II and made a part hereof. The other party to the contract signs an application made out in triplicate in the following form:

"Crude Oil Corporation of America

193 .

| Place | Date |
|-------|------|

I hereby make application to purchase ———— barrels of crude oil of ———— gravity at $———— per barrel, to be deliverable in accordance with the terms and conditions set forth in your

Draft

for $———— is handed you herewith,

Check

representing payment in full.

Name ————

Address ————

Representative

Make Drafts and Checks Payable to Crude Oil Corporation of America."

At the time of signing the application he pays to the "Corporation" salesman the sum of 50 cents (now 57 cents) for each barrel of oil specified in the application. The salesman mails the check or draft received as payment and copies of the application to the "Corporation" at Tulsa, Okl. The "Corporation" mails, either to its salesmen or to the purchasers, delivery contracts in the form mentioned (Exhibit II), together with a so-called trust certificate, a copy of which is marked Exhibit III and made a part hereof. Approximately 275 of these contracts, mentioning nearly 1,000,000 barrels of oil, have been entered into between the "Corporation" and the buyers. The average number of barrels of oil mentioned in each contract

is 3000, although some of the contracts specify amounts less than 500 barrels.

Franklin, the trustee, receives from those operating the pipe lines, out of the proceeds of oil runs to the pipe lines, the royalty interests the "Corporation" owns, and he deposits these remittances in a special account in the First National Bank of Tulsa, Okl., subject to the check of "Crude Oil Corporation of America, Special, by Harry L. Mourer," and countersigned by "W. C. Franklin, Trustee." Checks for sums indicating that the delivery contracts are being fulfilled at a rate of approximately 4 per cent. of the whole each year are drawn against this account each month in favor of the purchasers. The checks and accompanying vouchers in the form following are sent from Tulsa, Okl., through the United States mail each month to the purchasers:

the Texas field, rather than the proceeds derived from the sale of the oil. The contracts make such procedure impracticable and highly unprofitable to the buyer. The "Corporation" has been operating since 1934. It has made contracts with over 275 buyers specifying approximately 1,000,000 barrels of oil, and to date no buyer has asked for delivery of oil at the place of production.

4. Before the defendants Wells-Kendall Company and B. E. Buckman & Co. were associated with the "Corporation," Douglas Winslow Adams was employed as a salesman by the "Corporation." To induce applicants to enter into the delivery contracts, he made the following false representations: That the contracts would net a return of two to three times the amount of the buyer's investment and would work out in four or five years;

"Crude Oil Corporation of America

The First National Bank & Trust Co.                    Check No. 119

86—1              Tulsa, Oklahoma          86—1

Tulsa, Okla.      June 20, 1935

Registered
J—4070                    $42 and 79 cents                    $42.79

Pay
To               Stewart E. Earle              Crude Oil Corporation of America Special
The
Order            Hermanville, Mich.                    Harry L. Mourer
of
                                                    Countersigned
                                                          W. C. Franklin

                                                                Trustee

...................................................................

Detach this Memorandum and retain for your Files

Crude Oil Corporation of America

Voucher No. ———                                          Check No. 119
Contract Number              10,000 Barrels              A. Carter
Delivered on Contract to: 5/1/35                    258.65 Barrels
Run In:    May                                      43.77 Barrels  Amount $43.77
Balance due on Contract:                           9,697.58 Barrels  Less Tax  .98
                                                             Check    42.79

I hereby certify that the statement contained hereon is correct.
                              W. C. Franklin

                                    Trustee."

The "Corporation" may fulfil the contract over a period of twenty-five years, and has that length of time to perform its contract with the buyer. The contracts are not made with persons who contemplate taking actual delivery of the oil in

that all the oil owned by the "Corporation" was in storage above the ground; that the applicant could call for the balance due for sale at any time and that it would be delivered; that the oil was insured against fire loss, thus protecting the

investor in the event of fire. These statements were false and untrue and known to Adams when made to be false.

At no time did the "Corporation" own more than approximately 2,000 barrels of oil in storage above the ground. Except for this amount, all of its holdings in oil were in the form of royalties, hereinbefore referred to. However, when the "Corporation" learned of sales thus closed by Adams, it immediately canceled the contracts, made restitution of the purchase price to the purchasers, and discharged Adams.

5. That on or about August 15, 1935, the "Corporation" entered into an agreement with Wells-Kendall Company whereby the Wells-Kendall Company arranged for the employment of B. E. Buckman & Co. to act as the agent for the "Corporation" in the procuring of the said delivery contracts. B. E. Buckman & Co. was accordingly employed by the "Corporation" as its salesman in this territory and procured for it approximately 250 delivery contracts specifying, on an average, 3,000 barrels of oil in each contract. For this service it received a commission of 7½ cents for each barrel of oil specified in the contracts. The Wells-Kendall Company received for its service rendered to the "Corporation" as aforesaid 2½ cents for each barrel of oil specified in the said contracts obtained by B. E. Buckman & Co.

6. That the defendant "Corporation" since 1935 has made use of the United States mail and of instruments of transportation and communication in interstate commerce in the making and execution of said contracts. It has used the mails to transport and deliver the said applications, the bill of sale and delivery contracts, trust agreements, trust certificates, checks and vouchers, prospectuses and advertising literature. The prospectuses are attached to the bill of complaint. One of the prospectuses carried a reproduction of a letter apparently received by the "Corporation" from a satisfied customer. It failed to state that this letter was written by a person who was then a stockholder of the "Corporation" and who had also acted as its sales agent in procuring the bill of sale and delivery contracts.

7. The "Corporation" does not buy and sell crude oil in large and small quantities. It has but one marketing method; namely, that of buying oil royalties and the making of the delivery contracts. The purchaser under the delivery contract does not and cannot determine the amount of oil to be sold each month under his agreement with the "Corporation."

8. That the defendants Crude Oil Corporation of America and B. E. Buckman & Co. have and are using the mails and instruments in interstate commerce in the making and execution of the said contracts.

9. That no registration has been filed with the Securities and Exchange Commission in respect to said agreements.

10. That the royalties deeded to Franklin as trustee, subsequent to the execution of the delivery contracts, have been paid for out of the proceeds the "Corporation" has received from the purchasers of the delivery contracts. That the operating expenses of the "Corporation," including the commissions paid its salesmen, are also paid out of these receipts.

### Conclusions of Law.

1. That the bill of sale and delivery contract, a copy of which is attached hereto marked Exhibit II, is a "security" as defined by section 2 (1) of the Securities Act of 1933, as amended (15 U.S.C.A. § 77b (1), and the provisions of section 5 of said act, as amended (15 U.S.C.A. § 77e) are applicable thereto.

2. That the Securities Act of 1933, as amended (15 U.S.C.A. § 77a et seq.), does not unlawfully interfere with intrastate commerce, nor is it an improper regulation of the mails. It violates no provision of the Federal Constitution, and no constitutional right of the defendants.

3. That the bill of complaint should be dismissed as against the defendant Wells-Kendall Company, without costs to the plaintiff.

4. That the defendants Crude Oil Corporation of America and B. E. Buckman & Co. have violated, and will, unless restrained, continue to violate, the provisions of section 5 of the Securities Act of 1933, as amended (15 U.S.C.A. § 77e). That as against these two defendants the injunctive relief prayed for in the bill of complaint should be granted to plaintiff.

5. That the plaintiff do have and recover its costs and disbursements from the defendants.

Plaintiff's counsel may submit to the court a proposed decree in accordance with these findings and conclusions, after first

submitting a copy thereof to defendants' counsel.

## Exhibit I

### Agreement

This agreement made and entered into on this 14th day of June, 1935, by and between Crude Oil Corporation of America, a corporation, party of the first part, and hereafter designated as Corporation, and W. C. Franklin, party of the second part, hereafter designated as Franklin.

Witnesseth:

That, whereas, Corporation is engaged in the business of purchasing oil royalties or oil reserves in the Mid-Continent Field and the sale of oil therefrom by Delivery Contract, copy of which is attached hereto and marked Exhibit "A," and

Whereas, it is the policy of Corporation in making Delivery Contracts for crude oil to protect each Delivery Contract by retaining properties having an estimated potential production of one and one-half times the amount required to be delivered under the provisions of said Delivery Contract, and

Whereas, it is the desire of Corporation, upon making Delivery Contracts for a specific quantity of crude oil, to place in the name and possession of a Trustee, producing oil royalties or oil reserves having an estimated production of one and one-half times the amount of crude oil agreed to be delivered thereby, to the end that the purchasers of oil from said Corporation may be protected by the retaining intact title to said properties until such time as delivery under the terms of its respective contracts with purchasers have been completed.

Now, therefore, for and in consideration of the premises and of One Dollar ($1.00) and other valuable considerations in hand paid by Corporation, receipt of which is hereby acknowledged by Franklin, it is understood and agreed by and between the parties hereto as follows:

Corporation does by these presents appoint Franklin as Trustee to take, receive and hold the title to such oil royalties or oil reserves and oil in storage, as Corporation may cause to be conveyed to him to protect and assure the fulfillment of its respective Delivery Contracts, and to hold the legal title thereto until such time as said Delivery Contracts respectively are completed; that is to say, upon the execution of any specific Delivery Contract the Corporation will transfer to said Trustee title to oil royalties or oil reserves or oil in storage estimated to produce one and one-half times the amount of crude oil agreed to be delivered under such contract.

The Corporation shall report to said Franklin, from time to time, all contracts for the sale of oil and shall designate and advise the said Franklin from what property or storage the Corporation intends to deliver such oil, as to each specific contract, but the Corporation shall not be limited as to such delivery to such property or tankage, except as it may be limited by the agreement between the purchaser and itself. It shall be the right and duty of said Franklin to receive all oil or other products produced from the property transferred to him and all monies derived from the sale of oil, and other products produced from said property, and to see that deliveries are made of oil, or the proceeds thereof, to the purchasers of such oil in accordance with the terms and provisions of the respective delivery contracts. When deliveries have been made of all oil under any delivery contract, any future oil or other products recovered from the property, or storage, theretofore designated and transferred as the source of supply for such delivery contract, shall be free from the terms of this agreement and shall be released to it by the Trustee.

It is understood and agreed that Franklin as such Trustee shall not be liable in any event for any act or acts of the Corporation and shall not be liable to Corporation or to any other person, firm or corporation to any extent beyond or above the liability incurred by the taking and holding of the legal title of the properties herein provided and the receiving of the income therefrom, as herein provided, and seeing that the same is distributed in accordance with the respective Delivery Contracts. Said Trustee shall not be liable in any event for errors or mistakes of judgment or in any other way, except for wilful and intentional violation of his trust or misappropriation of funds thereunder.

Franklin as such Trustee shall receive from Corporation for his services such compensation as may be agreed upon by the parties hereto from time to time.

The cost and expense of this trust or incident thereto shall be borne by Corporation.

Franklin as such Trustee shall give and maintain bond in such sum and with such surety or sureties, as the parties hereto may agree upon from time to time, for the

faithful performance of his duties as such Trustee; the cost thereof to be borne by Corporation.

Upon the death or resignation of Franklin as such Trustee, his successor shall be selected by the Board of Directors of the Corporation, which successor shall act under the provisions hereof and shall succeed to all the rights and duties of the Trustee appointed hereby, without the necessity of formal transfers or conveyances of any nature or kind whatsoever.

This agreement supersedes in all respects, a certain contract executed by the parties hereto under date of November 20th, 1934, and the duties and obligations of the parties hereto relative to any and all properties hereafter conveyed to Trustee hereunder shall be governed exclusively by the provisions hereof.

In witness whereof, the party of the first part has caused this instrument to be signed by its President and attested by its Secretary, and the party of the second part has signed this instrument in triplicate on the day and year first above written.

Crude Oil Corporation of America

By Harry L. Mourer

President

Attest:

Wallace C. Franklin, Jr.
Secretary

W. C. Franklin

Exhibit II

Crude Oil Corporation of America
Tulsa, Oklahoma

Bill of Sale and Delivery Contract

For ———— Barrels of Crude Oil

Crude Oil Corporation of America, the seller, has sold to and agrees to deliver, and ———— of ———— has purchased, at the price of $———— per barrel, ———— barrels of crude oil of ———— Baume gravity, payment for which is hereby acknowledged by the seller.

It is intended hereby that actual delivery of such oil is to be made to the buyer and the seller agrees to deliver the number of barrels of oil purchased by the buyer.

The sale and delivery of such oil is made subject to the following terms and conditions:

(1) The seller shall deliver to the buyer such oil in monthly quantities but not less than ———— barrels during any one year until the fulfillment of this agreement, but the seller shall have the right to deliver oil in larger quantities than the minimum amounts specified herein. All such over-deliveries shall be credited to the next maturing deliveries. In the event, by reason of any governmental or state agency order the amount of oil permitted to be produced or run from the territory known as ———— field or the amount of oil permitted to be produced or run per well from said field is reduced from the amount now permitted, the rate of delivery herein shall be correspondingly reduced. In the event the seller is prevented from making delivery of oil by reason of strikes, fire, or other cause beyond its control, then the seller shall be excused from making the minimum delivery as herein provided for during the period that such restraint exists.

(2) The buyer shall notify the seller when he desires delivery of such oil, but until the buyer shall call for delivery of oil to him, and provide the tankage therefor, the seller shall not be required to segregate the buyer's oil, and it is hereby authorized to sell the buyer's deliverable oil to any oil purchasing or pipe line company at the posted price at the time of sale, and shall remit the net proceeds thereof to the buyer without deduction of any kind whatsoever except such state and federal taxes as may be imposed thereon. The oil so sold shall be regarded as delivery of oil to the buyer under the terms of this agreement.

(3) When the buyer shall desire to take delivery of all or any part of oil sold hereunder, the buyer shall give written notice thereof to the seller at least thirty (30) days before the first day in any month during which oil shall be delivered and delivery when made pursuant to such notice shall be at the rate herein provided for and shall be made at the place of seller's production or storage in the ———— field.

Crude Oil Corporation of America

By ————

President.

Attest:

————

Secretary

Specimen

Exhibit III

Certificate

This certifies that Crude Oil Corporation of America has transferred to me as Trustee title to oil producing properties which have been estimated as capable of producing—300—barrels of crude oil.

The title to said oil producing properties is to be held by me as Trustee until there has been delivered, under the terms

of a certain Bill of Sale and Delivery Contract, dated ——— between Crude Oil Corporation of America and Frank Mate of Chicago, Illinois a total of—200—barrels of crude oil.

Said corporation has entered into an agreement with me as Trustee to the effect that in the event the deposited properties do not produce—200—barrels of crude oil, said corporation will deposit with me as Trustee other and additional oil producing properties or oil in storage until such time as provided in the said Bill of Sale and Delivery Contract.

Tulsa, Oklahoma
Dated March 8, 1935.

W. C. Franklin
Trustee

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Certificate

This certifies that there has been filed with me a copy of Bill of Sale and Delivery Contract executed by Crude Oil Corporation of America to Joseph Green of Chicago, Illinois for 10,000 barrels of crude oil, dated Sept. 20th, 1935, and that there has been transferred to me as Trustee, by Crude Oil Corporation of America, title to oil producing properties in East Texas Field which have been estimated as capable of producing 15,000 barrels of crude oil.

The title to said oil producing properties is to be held by me and all oil produced therefrom received by me as Trustee, until there has been delivered 10,000 barrels of crude oil or the proceeds thereof, under the terms of said Bill of Sale and Delivery Contract.

W. C. Franklin
Trustee

Tulsa, Oklahoma, Sept. 20th, 1935.
Specimen